Affirmed and Memorandum Opinion filed July 6, 2010.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00601-CV

___________________

 

Southwest Pipe Services, Inc.,
Appellant

 

V.

 

Kinder Morgan, Inc., Appellee



 



 

On
Appeal from the 280th District Court

Harris County,
Texas



Trial Court Cause No. 2007-30117

 



 

 

MEMORANDUM OPINION

            Appellant
Southwest Pipe Services, Inc. challenges the trial court’s judgment in favor of
appellee Kinder Morgan, Inc.  Kinder Morgan sued to recover damages arising
from Kinder Morgan’s sale of used pipe to Southwest Pipe.  Southwest Pipe
contends that the trial court erred by (1) not permitting expert John Buckert
to testify, and by instructing the jury to answer “yes” to jury question number
one; (2) excluding testimony regarding course of dealing; (3) allowing
testimony from an undisclosed expert; and (4) awarding Kinder Morgan
pre-judgment interest and costs.  We affirm.

Background

Christopher Hokanson, a senior material management analyst
for Kinder Morgan, sent invitations to potential customers for bids to purchase
used pipe from Kinder Morgan.  Joe Briers, who serves as president of Southwest
Pipe, received an invitation and submitted a bid on January 10, 2007.  Southwest
Pipe’s bid stated that it was “based upon good round straight pipe cut at or
near the welds.”  Hokanson notified Southwest Pipe that it was the highest
bidder and faxed Kinder Morgan’s standard bill of sale contract to Southwest
Pipe.  The contract stated that Southwest Pipe agreed to purchase the pipe for
$239,698.50.  The contract also contained an “as is” clause located on the
first page stating as follows:

Descriptions of the Property are for the purpose of
identification only.  While Seller intends that the descriptions are accurate, SELLER
NEITHER REPRESENTS NOR WARRANTS that the Property conforms to the
descriptions.  Seller hereby covenants that the Property is free and clear of
liens and encumbrances, but SELLER MAKES NO REPRESENTATIONS OR WARRANTIES,
EXPRESS OR IMPLIED OF ANY KIND, INCLUDING WITHOUT LIMITATION AS TO THE
CONDITION OF THE PROPERTY OR ITS FITNESS FOR ANY PURPOSE.  PURCHASER
REPRESENTS, WARRANTS AND ACKNOWLEDGES THAT IT HAS INSPECTED THE PROPERTY TO ITS
SATISFACTION AND IS BUYING ON AN “AS IS – WHERE IS” BASIS WILL [sic] ALL
FAULTS.  GRANTEE FURTHER ACKNOWLEDGES THAT IT HAS NO RECOURSE AGAINST GRANTOR
IN THE EVENT OF DISCOVERY OF ANY DEFECTS OF ANY KIND, LATENT OR PATENT.

(emphasis in original).  Briers
signed the contract on January 30, 2007, and returned it to Hokanson.  

            On February 21,
2007, Briers contacted Hokanson and asserted that the pipe was “damaged.” 
Briers also sent Hokanson an e-mail regarding “contingency pricing” for the
“damaged” pipe.  Southwest Pipe later sent Kinder Morgan a check for $53,333 as
full payment for the pipe based on a unilateral reduction in the sales price to
account for the pipe’s condition.  Kinder Morgan rejected this proposed payment
and sued Southwest Pipe on May 15, 2007, alleging causes of action for breach
of contract, suit on sworn account, quantum merit, and promissory estoppel.  Southwest
Pipe filed its original answer and amended counterclaim alleging causes of action
for breach of contract and breach of warranty on July 18, 2008.  

The jury found that Southwest Pipe breached the
contract, and that Southwest Pipe’s breach caused damages of $200,000 to Kinder
Morgan.  The trial court signed its judgment in favor of Kinder Morgan on April
3, 2009, awarding Kinder Morgan $200,000 in damages, plus $70,000 in attorney’s
fees, and pre-judgment and post-judgment interest.  The trial court also
assessed costs against Southwest Pipe.  Southwest Pipe appeals from the trial
court’s judgment.       

Analysis

            Southwest Pipe
presents four issues on appeal.  First, Southwest Pipe contends that the trial
court erred in not permitting expert Buckert to testify and in instructing the
jury to answer “yes” to jury question number one.  Second, Southwest Pipe
contends that the trial court erred in excluding the testimony of Burrell
Thomas and Henry Schiro.  Third, Southwest Pipe contends that the trial court
erred in allowing testimony from an undisclosed expert.  Lastly, Southwest Pipe
contends that the trial court erred in awarding Kinder Morgan pre-judgment
interest and costs.  We address each issue in turn.

I.         Buckert’s
Testimony and Jury Instruction

In its first issue, Southwest Pipe argues that the
trial court erred by (1) not permitting expert Buckert to testify regarding
course of dealing within the pipe industry, and (2) “instructing the jury to
answer ‘yes’ to Jury Question No. 1, the breach of contract portion of the
charge.”  Southwest Pipe predicates both arguments on the unenforceability of
the contract’s “as is” clause.  

Courts will give effect to an “as is” clause unless
the clause is set aside.  See Prudential Ins. Co. of Am. v. Jefferson Assocs.,
Ltd., 896 S.W.2d 156, 161 (Tex. 1995).  An “as is” clause may be set aside if
(1) the buyer was induced to enter into the contract containing “as is” language
by the seller’s fraudulent representation or concealment, or (2) the seller
engaged in conduct that impaired, obstructed, or interfered with the buyer’s
inspection of the property being sold.  Id. at 162.  “Other aspects of a
transaction” also may influence whether an “as is” clause is enforceable,
including (1) the sophistication of the parties and whether they were
represented by counsel, (2) whether the contract was an arm’s length
transaction, (3) the relative bargaining power of the parties and whether the
contractual language was freely negotiated, and (4) whether that language was an
important part of the parties’ bargain, and not simply added in a “boilerplate”
provision.  Id.

            Southwest Pipe
argues that the “as is” clause is unenforceable based on (1) fraudulent
inducement, and (2) “other aspects of the transaction.”  Southwest Pipe does
not argue that Kinder Morgan “impaired, obstructed, or interfered with” its inspection
of the pipe. 

            Southwest Pipe
first argues that Kinder Morgan fraudulently induced it into signing the
contract because Kinder Morgan concealed the pipe’s condition.  Southwest Pipe
does not assert that Kinder Morgan made any fraudulent representations
regarding the pipe’s condition.  Briers testified that “there was absolutely no
representation by Kinder Morgan that they were going to sell [him] straight
round pipe.”  

Southwest Pipe argues that Kinder Morgan concealed
the pipe’s condition because Kinder Morgan did not provide Southwest Pipe “with
copies of the pictures of pipe taken prior to Plaintiff signing the contract on
January 30, 2007.”  There is no evidence that Southwest Pipe requested
photographs of the pipe before signing the contract, or that Kinder Morgan failed
to produce photographs of the pipe in response to a request before Southwest
Pipe signed the contract.  In its responses to Kinder Morgan’s requests for
admissions, Southwest Pipe admitted that it was not asserting a claim or defense
of fraud in this suit.  Southwest Pipe’s responses were admitted into evidence
at trial.    

Southwest Pipe argues that this case is analogous to Dunbar
Medical Systems, Inc. v. Gammex Inc., 216 F.3d 441, 444-51 (5th Cir. 2000). 
Dunbar Medical Systems entered into a settlement agreement with Gammex in which
Dunbar Medical Systems agreed to release its claims against Gammex in exchange
for $70,000 and specified equipment.  Id. at 446.  During negotiations,
Gammex represented to Dunbar Medical Systems that the equipment would be
“either new and has never been used, or has previously been used as
demonstration or loaner equipment.”  Id. at 445-46.  The settlement
agreement also included an express warranty stating that the equipment was
“either new and has never been used, or has previously been used as
demonstration or loaner equipment.”  Id. at 446.  When Dunbar Medical
Systems received the equipment, it discovered that the equipment was not of the
specified quality.  Id. at 446-47.

Dunbar Medical Systems sued Gammex asserting breach
of contract and fraud claims.  Id.  Gammex argued that Dunbar Medical
Systems’ claims were barred by the contract’s “as is” clause.  Id. at
448.  The court held that Dunbar Medical Systems’ claims were not barred by the
contract’s “as is” clause because Gammex expressly misrepresented the condition
of the equipment.  Id. at 450.    

Unlike the circumstances in Dunbar Medical Systems,
there is no evidence here that Kinder Morgan made an express misrepresentation
regarding the pipe’s condition.  The contract did not include an express
warranty regarding the pipe’s condition, and Briers testified that “there was
absolutely no representation by Kinder Morgan that they were going to sell
[him] straight round pipe.”  There is no evidence that Kinder Morgan fraudulently
concealed the pipe’s condition from Southwest Pipe.  Therefore, Southwest Pipe
cannot avoid the “as is” clause based on fraudulent inducement.                          

            Southwest Pipe
next argues that the “as is” clause is unenforceable based on the totality of
the circumstances surrounding the contract because “there was no negotiation of
any terms, [Southwest Pipe] was not represented by counsel, and the parties
were obviously not of equal bargaining power and sophistication.”  Southwest
Pipe also argues that the “as is” clause is merely a “boilerplate” term.  

The evidence at trial showed that Hokanson sent
invitations to potential customers for bids to purchase used pipe located in
Vance, Alabama.  Southwest Pipe received an invitation and submitted a bid. 
Hokanson notified Southwest Pipe that it was the highest bidder and faxed
Kinder Morgan’s standard bill of sale contract, which included an “as is”
clause.  Briers signed the contract and returned it to Hokanson.  

Briers testified that he was familiar with Kinder
Morgan’s standard bill of sale contract because he had done business with
Kinder Morgan “for years.”  He agreed that he was buying the pipe “on an as
is-where is basis.”  He testified that he was familiar with the practice of
buying pipe “as is-where is,” and that “if something in a contract [is] either
bold or italicized, that means it’s a very important term.”  Briers testified
that Kinder Morgan made no representations regarding the pipe’s condition.  He
further testified that he was not surprised that Kinder Morgan made no
representations regarding the pipe’s condition because “[t]hey would never do
that.”  When asked if it was “impossible” for Kinder Morgan to make a
representation regarding the pipe’s condition, Briers agreed.  Briers also
testified that he had 18 years of experience in the pipe industry, and he was
designated as an expert in the pipe industry by Southwest Pipe.  

In light of this evidence, neither the absence of
attorney participation nor the circumstances surrounding the underlying
contract establish that the “as is” clause is unenforceable.  Two experienced parties
contracted at arm’s length.  Southwest Pipe was a sophisticated party; Briers
testified that he has 18 years of experience in the pipe industry, and was
designated as an expert in the pipe industry.  There is no evidence that the
contract was the product of coercion or was not freely negotiated.  Briers
testified that he was familiar with Kinder Morgan’s standard bill of sale
contract, understood all of the terms, and agreed to buy the pipe “as is.”  Further,
the “as is” clause was located on the first page, set off in capital letters
and bold font.  Therefore, Southwest Pipe cannot avoid the “as is” clause based
on the totality of the circumstances surrounding the transaction.  See Prudential
Ins. Co. of Am., 896 S.W.2d at 162.    

Southwest Pipe bases its argument that the trial
court erred in “instructing the jury to answer ‘yes’ to Jury Question No. 1,
the breach of contract portion of the charge” solely on the unenforceability of
the “as is” clause: “In the event the court had redacted the ‘as is’ clause
portion of the contract, the jury could have been able to fairly decide which
party breached the contract and award damages accordingly.”  Having found the
“as is” clause to be enforceable, we reject this argument.

Southwest Pipe next argues that the trial court erred
in excluding Buckert’s testimony.  Buckert was designated as an expert witness
regarding course of dealing within the pipe industry.  Specifically, Southwest
Pipe argues that the trial court should have allowed Buckert to testify that
(1) it is common in the pipe industry for contracts to contain “as is” clauses;
(2) it is understood throughout the industry that pipe is sometimes damaged
upon removal or while in the ground; and (3) it is usual and customary that
these contracts are renegotiated due to this damage once the pipe has been
removed and accepted by the buyer.  Southwest Pipe argues that because “the ‘as
is’ clause was clearly unenforceable . . . evidence of course [of]
dealing should have been presented to the jury.”  

Evidentiary rulings are committed to the trial court’s
sound discretion.  Bay Area Healthcare Group, Ltd. v. McShane, 239
S.W.3d 231, 234 (Tex. 2007) (per curiam).  We review a trial court’s decision
to admit or to exclude evidence for an abuse of that discretion.  In re
J.P.B., 180 S.W.3d 570, 575 (Tex. 2005) (per curiam).  A trial court abuses
its discretion when it acts without reference to any guiding rules or
principles. Garcia v. Martinez, 988 S.W.2d 219, 222 (Tex. 1999) (per
curiam).  However, we review questions of law de novo.  Harris County
Hosp. Dist. v. Tomball Reg’l Hosp., 283 S.W.3d 838, 842 (Tex. 2009).  We
must uphold the trial court’s evidentiary ruling if there is any legitimate
basis for the ruling.  Owens-Corning Fiberglas Corp. v. Malone, 972
S.W.2d 35, 43 (Tex. 1998).

Course of dealing evidence[1] is not considered when
a contract is unambiguous.  See Frost Nat’l Bank v. L & F Distribs.,
Ltd., 165 S.W.3d 310, 313 n.3 (Tex. 2005) (per curiam); James L. Gang
& Assocs., Inc. v. Abbott Labs., Inc., 198 S.W.3d 434, 437 (Tex. App.—Dallas
2006, no pet.).  A contract is ambiguous when it is susceptible to more than
one reasonable interpretation.  Frost Nat’l Bank, 165 S.W.3d at 312.  If
a contract is worded so that it can be given a certain or definite legal
meaning, it is unambiguous.  Id.  The parties’ mere disagreement about a
contract’s meaning does not render it ambiguous.  Hewlett-Packard Co. v.
Benchmark Elecs., Inc., 142 S.W.3d 554, 561 (Tex. App.—Houston [14th Dist.]
2004, pet. denied).  

            We conclude that
the contract is unambiguous because it is not subject to more than one
reasonable interpretation.  The contract states that Kinder Morgan agrees to
sell the specified pipe to Southwest Pipe for $239,698.50.  There is no
language in the contract to indicate that the price was contingent on the pipe’s
condition, or that the price would be renegotiated based on the pipe’s condition. 
The contract states that Kinder Morgan makes no representations regarding the pipe’s
condition, and that Southwest Pipe acknowledges that it has inspected the pipe
and is buying the pipe “as is.”  The only reasonable interpretation of the
contract is that the pipe is being sold “as is” for $239,698.50.  Therefore,
the trial court did not abuse its discretion in excluding Buckert’s testimony
regarding course of dealing.  See Frost Nat’l Bank, 165 S.W.3d at
313 n.3; James L. Gang & Assocs., Inc., 198 S.W.3d at 437.  

            We overrule
Southwest Pipe’s first issue.  

II.        Testimony
of Thomas and Schiro

In its second issue, Southwest Pipe argues that the
trial court erred in excluding the testimony of Thomas and Schiro regarding
Kinder Morgan’s course of dealing.  Thomas and Schiro are Kinder Morgan
employees who previously had entered into transactions for the sale of pipe
with Southwest Pipe.  Southwest Pipe argues that Thomas and Schiro should have
been allowed to testify that (1) “in their usual course of business, they
notify the buyer that the pipe is being sold ‘as is’”; and (2) Schiro generally
rejects a bid for “good, round straight pipe” and notifies the buyer that the
bid has been disqualified due to the contingency.      

            Having already concluded
that the contract is enforceable and unambiguous, we further conclude that the
trial court did not abuse its discretion in excluding the testimony of Thomas and
Schiro regarding course of dealing.  See Frost Nat’l Bank, 165
S.W.3d at 313 n.3; James L. Gang & Assocs., Inc., 198 S.W.3d at
437.  We overrule Southwest Pipe’s second issue.          

III.      Testimony of
Alleged Undisclosed Expert Witness

            In its third
issue, Southwest Pipe argues that the trial court erred in allowing Hokanson to
testify as to the value of the pipe in the underlying transaction because this
testimony constituted expert witness testimony.  Hokanson was disclosed as a
fact witness; he was not disclosed as an expert witness.       

Property
owners can testify about the value of their property if they are familiar with
it, even though they are not testifying as an expert.  See Porras v. Craig,
675 S.W.2d 503, 504-05 (Tex. 1984); Taiwan Shrimp Farm Vill. Assoc., Inc. v.
U.S.A. Shrimp Farm Dev., Inc., 915 S.W.2d 61, 71 (Tex. App.—Corpus Christi
1996, writ denied).  The testimony must show that the property owner is
testifying as to market value and not intrinsic value.  Porras, 675
S.W.2d at 505; Taiwan Shrimp Farm Vill. Assoc., Inc., 915 S.W.2d at 71.  Therefore,
Hokanson, as a senior material management analyst for Kinder Morgan, could
establish the value of the pipe as a fact witness if his opinion was based on
market value.[2]

At
trial, Hokanson testified that as part of his job he receives a publication
called “Pipe Exchange” on a regular basis via e-mail.  He testified that Pipe
Exchange contains “market quotations, tabulations, and other lists” regarding
pricing of scrap metal.  He testified that he uses Pipe Exchange to “gauge bids
or analyze bids.”  Specifically, Hokanson testified that he uses the “Scrap
Iron Consumer Buying Price – Chicago #1 Busheling” index reported in Pipe
Exchange to analyze bids.  Hokanson then testified as to the value of the pipe
in the underlying transaction based on this index as reported in a Pipe
Exchange issue he received on January 20, 2009.  Hokanson testified that the
“scrap price of iron” was $300 per ton on February 7, 2007, $305 per ton on
February 8, 2007, and $780 per ton on June 5, 2008. 

Hokanson’s
testimony shows his familiarity with the market value of the pipe, and that his
opinion is not based on intrinsic value.  Therefore, Hokanson’s testimony
regarding the value of the pipe was admissible even though he was not
designated as an expert witness.  See Porras, 675 S.W.2d at 505; Taiwan
Shrimp Farm Vill. Assoc., Inc., 915 S.W.2d at 71.  The trial court
did not abuse its discretion in allowing Hokanson to testify regarding the
value of the pipe.

We
overrule Southwest Pipe’s third issue.    

IV.      Pre-Judgment
Interest and Costs

            Lastly,
Southwest Pipe argues that the trial court erred in awarding Kinder Morgan
pre-judgment interest and costs.

We review a trial court’s award of pre-judgment
interest and allocation of costs for an abuse of discretion.  See Madison v.
Williamson, 241 S.W.3d 145, 157 (Tex. App.—Houston [1st Dist.] 2007, pet.
denied); Marsh v. Marsh, 949 S.W.2d 734, 744 (Tex. App.—Houston [14th
Dist.]1997, no writ).  A trial court abuses its discretion when it acts without
reference to any guiding rules or principles.  Garcia, 988 S.W.2d at 222.
   

            A.        Pre-Judgment
Interest

Southwest Pipe first argues that the trial court
erred in failing to offset its award of pre-judgment interest to Kinder Morgan because
“a continuance was granted so that Kinder Morgan could comply with discovery.” 


Prejudgment interest is awarded to fully compensate
the injured party, not to punish the defendant.  Johnson & Higgins of
Tex., Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 528 (Tex. 1998).  It is
considered compensation allowed by law as additional damages for lost use of
the money due between the accrual of the claim and the date of judgment.  Id.
 

The case was originally set for trial on October 6,
2008.  The trial court reset the case for trial on March 16, 2009 after
granting Southwest Pipe’s motion to compel discovery and extending the
discovery deadline.  Southwest Pipe argues that Kinder Morgan should not have
received pre-judgment interest during this five-month delay because the delay
was “caused by its own malfeasance.”      

The decision to award prejudgment interest is left to
the sound discretion of the trial court.  Citizens Nat’l Bank v. Allen Rae
Invs., Inc., 142 S.W.3d 459, 487 (Tex. App.—Fort Worth 2004, no pet.).  Based
on the record before us, we cannot say the trial court abused its discretion in
awarding Kinder Morgan pre-judgment interest.  We overrule Southwest Pipe’s third
issue.

            B.        Court
Costs  

            Southwest
Pipe next contends that the trial court erred in adjudicating Kinder Morgan’s
court costs against it because Kinder Morgan failed to provide the trial court
and Southwest Pipe with an accounting of its court costs before the trial court
entered its final judgment.  

Generally, “[t]he successful party to a suit shall
recover of his adversary all costs incurred therein.”  Tex. R. Civ. P. 131.  A
“successful party” is a party who obtains a judgment from a competent court vindicating
a civil claim of right.[3]
 Madison, 241 S.W.3d at 157.  A successful party is not required to submit
an accounting of its court costs to the trial court or opposing counsel before
judgment may be entered adjudicating costs.  See Tex. Civ. Prac. &
Rem. Code Ann. § 31.007(a) (Vernon 2008); Madison, 241 S.W.3d at 158. 
Rather, the successful party is responsible for submitting a record of its
court costs to the court clerk so that the clerk can perform its ministerial
duty and tax costs in accordance with Texas Rule of Civil Procedure 622.  Madison,
241 S.W.3d at 158.  

Therefore, we cannot conclude that the trial court
abused its discretion in awarding costs to Kinder Morgan even though Kinder
Morgan did not submit an itemized accounting of its costs to the trial court or
opposing counsel.  See id.  We overrule Southwest Pipe’s fourth issue.

Conclusion

            We affirm the
trial court’s judgment.

                                                                                    

                                                                        /s/        William
J. Boyce

                                                                                    Justice

 

 

Panel consists of Chief
Justice Hedges and Justices Yates and Boyce.









[1]
“Course of dealing” is defined as “a sequence of
conduct concerning previous transactions between the parties to a particular
transaction that is fairly to be regarded as establishing a common basis of
understanding for interpreting their expressions and other conduct.”  Tex. Bus.
& Com. Code Ann. § 1.303(b) (Vernon 2009).  Evidence of course of
dealing is admissible to “explain or supplement” a contract, but it may not be
used to contradict an express term.  Id. § 2A.202 (Vernon
2009).  Express terms of a contract control over course of dealing.  Id.
§ 1.303(e)(1).  

 





[2] Southwest Pipe does not
contend that the property owner rule is inapplicable to corporate owners. 
Therefore, we do not address that issue.  Cf. Speedy Stop Food Stores, Ltd.
v. Reid Road Mun. Util. Dist. No. 2, 282 S.W.3d 652 (Tex. App.—Houston
[14th Dist.] 2009, pet. granted).





[3] Southwest Pipe does not
contest Kinder Morgan’s status as the “successful party” in this lawsuit.