REVISED - December 18, 2000

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 99-40205
_____

DENNIS C. GANDY,

Plaintiff-Appellant,

VERSUS

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
For the Eastern District of Texas
_____
December 11, 2000

Before DAVIS and EMILIO M. GARZA, Circuit Judges, and POGUE[1],
District Judge.

W. EUGENE DAVIS, Circuit Judge:

In this action by Dennis Gandy, a taxpayer, against the United
States to recover damages under 26 U.S.C. §7431(a)(1) for wrongful
oral and written disclosures of his "tax return information," the
district court dismissed the suit and Gandy appeals. The issues on
appeal are: 1) whether the district court clearly erred by finding
that the statute of limitations began to run on the written
disclosures in 1990, and 2) whether the district court erred by

_____

[1]Judge, U.S. Court of International Trade, sitting by
designation.

1

holding that the IRS agents made the oral disclosures in good faith. For the reasons that follow, we affirm.

I.

In 1989, IRS Special Agent Ronnie McPherson ("McPherson") was assigned to conduct a criminal investigation of Dennis Gandy ("Gandy") for the years 1985, 1986, and 1987. Special Agent Laura Sanders ("Sanders") was later assigned to assist with the investigation. On September 19, 1990, McPherson sent a form letter soliciting financial information from 269 customers of the Dennis Gandy Nursery ("Nursery"), which was owned and operated by Gandy. A sentence in the body of the "circular" letter to Gandy's customers stated that Gandy was under investigation by the Criminal Investigation Division of the IRS.

The district court dismissed as time barred both counts of Gandy's complaint seeking recovery for the written disclosures in the circular letter. The court found that Gandy learned in 1990 of the wrongful disclosures the agent made in this letter and that the two year statute of limitations therefore began to run in 1990. Because Gandy filed his complaint in 1996, the court held that the two counts of his complaint concerning the written disclosures made in the letter were time barred.

In addition to Gandy's claim based on the written disclosures, Gandy also sought damages based on oral disclosures. The oral disclosures at issue were made by McPherson and Sanders when they told potential witnesses and other third parties that they were conducting a criminal investigation of Gandy.

2

Following a full bench trial, the district court held that McPherson and Sanders believed in good faith, although erroneously, that they were authorized by 26 U.S.C. § 6103 to tell third parties that Gandy was under criminal investigation. The district court dismissed Gandy's suit and this appeal followed.

## II.

Gandy argues first that the district court erred in dismissing as time barred his claim for wrongful written disclosure of tax return information. 26 U.S.C. § 7431 acts as a waiver of sovereign immunity for suits seeking damages for wrongful disclosure of tax return information. 26 U.S.C. § 7431(d) provides that a claim for wrongful disclosure of tax return information must be brought "within two years after the date of discovery by the plaintiff of the unauthorized disclosure." If a waiver of sovereign immunity contains a limitations period, a plaintiff's failure to timely file suit deprives the court of jurisdiction. United States v. Dalm, 494 U.S. 596, 608, 110 S.Ct. 1361, 1368 (1990); Dunn-McCampbell Royalty Interest, Inc. v. National Park Serv., 112 F.3d 1283, 1287 (5th Cir. 1997)(". . . failure to sue the United States within the limitations period is not merely a waivable defense. It operates to deprive federal courts of jurisdiction.").

The district court's finding that Gandy knew of the contents of the written disclosures in the circular letter more than two years before filing the complaint is a factual finding reviewed for clear error. Emmons v. Southern Pacific Transp. Co., 701 F.2d 1112, 1124 (5th Cir. 1983). The court based its finding on the

3

testimony of Patricia Davidson ("Davidson") and Bob Cartwright ("Cartwright").

Davidson, who worked as a receptionist at the Nursery, testified that shortly after the letters were mailed, she answered phone calls from approximately 100 customers who wanted to speak to Gandy about the IRS letter. Davidson testified that she overheard Gandy reassuring these customers that the IRS would clear him of any wrongdoing. Cartwright, one of Gandy's customers, testified that after receiving the letter, he called Gandy and told him he had received a letter from a criminal investigator.

Gandy testified that he did not have actual knowledge of the contents of the letters. But credibility calls are for the district court and it committed no error in choosing to believe Davidson and Cartwright, rather than Gandy. Thus, the district court's finding that the statute of limitations began to run on the written disclosures in 1990 was not clearly erroneous. Therefore, the district court correctly concluded that the two counts of Gandy's complaint relating to written disclosures were time barred. The district court had no jurisdiction over this claim because the United States has not waived sovereign immunity for untimely suits.

### III.

Gandy next argues that McPherson and Sanders made unnecessary disclosures of tax return information when they orally disclosed to potential witnesses that they were conducting a criminal tax investigation of Gandy. The district court held that the United States was not liable for McPherson and Sanders's oral disclosures

4

of Gandy's tax return information because the IRS agents acted under a good faith, although erroneous, interpretation of 26 U.S.C. § 6103. We review the district court's conclusion that agents McPherson and Sanders acted in good faith as a mixed question of fact and law. We review the court's subsidiary fact findings for clear error and its legal conclusions and application of law to fact de novo. Robicheaux v. Radcliff Material, Inc., 697 F.2d 662, 666 (5th Cir. 1983). The subsidiary facts are undisputed. Therefore, the legal question is whether McPherson and Sanders, as reasonable agents, acted in good faith when they orally disclosed that Gandy was under criminal investigation. We begin our analysis with a consideration of the relevant statutes and the IRS's interpretation of these statutes as reflected in its regulations and manuals.

26 U.S.C. § 6103(a)(1) states that "no officer or employee of the United States . . . shall disclose any return or return information obtained by him in any manner . . . ." The government stipulates that the agents' oral statements that they were conducting a criminal investigation constitute disclosure of return information. However, 26 U.S.C. § 6103(k)(6), which includes an exception to 26 U.S.C. § 6103(a)(1), provides, in pertinent part:

> An internal revenue officer or employee may, in connection with his official duties relating to any . . . criminal tax investigation . . ., disclose return information to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available, with respect to the . . . liability for tax . . . . Such disclosures shall be made only in such situations and under such conditions as the Secretary may prescribe by regulation.

5

Id. (emphasis added).

The relevant provisions in the IRS's regulations and manuals are Treasury Regulation § 301.6103(k)(6)-1 and §§ 348.3 and 347.2 of the Handbook.  Treasury Regulation § 301.6103(k)(6)-1 states that:

> [A]n officer or employee of the Internal Revenue Service . . . is authorized to disclose taxpayer identity information (as defined in section 6103(b)(2)), the fact that the inquiry pertains to the performance of official duties, and the nature of the official duties in order to obtain necessary information relating to the performance of such official duties . . . .

Id. (emphasis added).  Section 348.3 of the Handbook, entitled Disclosures for Investigative Purposes, provides that:

> Special agents are specifically authorized by I.R.C. § 6103(k)(6) to disclose return information to the extent necessary to gather data which may be relevant to a tax investigation.  Situations in which special agents may have to make such disclosures in order to perform their duties arise on a daily basis.  For example, this occurs whenever they contact third parties believed to have information pertinent to a tax investigation.

Section 347.2 of the Handbook deals specifically with circular letters sent out by IRS agents.[2]  At the time the agents made the oral disclosures at issue - before it was changed in 1992[3] - § 347.2 of the Handbook provided that:

> Caution must be exercised not to damage the reputation of the taxpayer by making the letter either offensive or suggestive of any wrongdoing by the taxpayer.  It must

---

[2]Circular letters are form letters sent out in mass mailings to gather information about a taxpayer under investigation.

[3]We look to the provisions in the regulations and manuals as they existed at the time of the oral disclosures, regardless of any subsequent changes.  All statements regarding these provisions refer to the provisions as they existed at the time.

<u>not</u> be disclosed in the body of the letter that the taxpayer is under investigation by the Criminal Investigation Division. Appropriate wording could be "The Internal Revenue Service is conducting an investigation of . . .". [sic] Any reference to the Criminal Investigation Division must be restricted to the signature blocks or ancillary headings. . . . The title "Special Agent" and Criminal Investigation Division will be included in the signature block."

The district court held that the oral disclosures at issue were not necessary. However, we need not decide the difficult legal question of whether agents McPherson and Sanders's oral disclosures that Gandy was under criminal investigation were necessary if we agree with the district court that agents McPherson and Sanders, as reasonable agents, were in good faith in believing that the disclosures were authorized and therefore necessary. We therefore turn to the United States' good faith defense.

26 U.S.C. § 7431 supplies a civil remedy for violations of 26 U.S.C. § 6103. However, § 7431(b) provides that "[n]o liability shall arise under this section with respect to any inspection or disclosure--(1) which results from a <u>good faith</u>, but erroneous, interpretation of section 6103 . . . ." <u>Id</u>. (emphasis added). This court defined the test for good faith under 26 U.S.C. § 7431(b) in <u>Huckaby v. United States</u>, 794 F.2d 1041 (5th Cir. 1986). We stated that "the good-faith defense in section 7431(b) should be judged by an objective standard analogous to that employed in <u>Harlow</u>. . . . <u>Harlow</u> would find officials acting in good faith when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Id</u>. at 1048 (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800,

7

818, 102 S.Ct. 2727, 2738 (1982)).

We later stated in Huckaby that:

The question then, as we have noted, is whether a reasonable IRS agent would be acquainted with the statute, and his own agency's interpretation of the statute as reflected in its regulations and manuals. The answer is self-evident. A reasonable IRS agent can be expected to know the provisions of sections 6103 and 7431, as they may be further clarified by IRS regulations and other IRS interpretations.

Id. at 1048-49 (footnote omitted).[4]

This Court interpreted the good faith provision of 26 U.S.C. § 7431(b) once again in Barrett v. United States, 51 F.3d 475 (5th Cir. 1995). We stated that "[a] reasonable IRS agent can be expected to know statutory provisions governing disclosure, as interpreted and reflected in IRS regulations and manuals." Id. at 479 (citing Huckaby, 794 F.2d at 1048). We stressed the importance of the agent following the procedures and rules that are found in the Handbook. We concluded that the disclosure in Barrett was not in good faith because "the Chief of the Criminal Investigation Division had not approved the content of the circular letters as

---

[4]Gandy also argues that in addition to the factors listed by this Court to determine whether an agent has acted in good faith, another factor is federal court decisions. Gandy cites three cases from other circuits: Heller v. Plave, 657 F.Supp 95 (S.D. Fla. 1987), Rodgers v. Hyatt, 697 F.2d 899 (10th Cir. 1983), and May v. United States, 141 F.3d 1169 (8th Cir. 1998)(unpublished opinion), as well as Johnson v. Sawyer, 640 F.Supp. 1126 (S.D. Tex. 1986) and Huckaby v. United States, 794 F.2d 1041 (5th Cir. 1986). He argues that these cases prohibit the oral disclosures at issue in this case. However, the only case Gandy relies on that involves an agent's oral disclosure to a potential witness that the taxpayer is under criminal investigation is a case from the Southern District of Florida - Heller. We decline to impose a burden on agents to follow a single district court opinion, particularly from a jurisdiction outside the territory in which they work.

required by Chapter 347.2 of the IRS 'Handbook for Special Agents.'" Id. at 479.

With this background, we now consider the arguments of the parties.

IV.

Gandy argues that a reasonable IRS agent could not have acted in good faith in orally disclosing that Gandy was under criminal investigation when § 347.2 of the Handbook prohibits such a disclosure in circular letters - a form of written disclosure. Gandy argues that no reasonable agent could interpret the IRS regulations and manuals to authorize a statement if it is made orally, while forbidding it in a written disclosure.[5]

We agree with the United States that § 347.2 of the Handbook does not control the question of whether the agents acted in good faith by orally disclosing that Gandy was under criminal investigation. Section 347.2 does not purport to have general application to all disclosures; it is expressly limited to circular letters, which are by definition mailed to large numbers - sometimes hundreds - of potential witnesses.

In contrast to circular form letters mailed to hundreds of business contacts, oral disclosures are typically made during one-

_____

[5]Gandy also argues that McPherson and Sanders should have been aware of instructions of IRS supervisors within their district prohibiting an agent from saying that a taxpayer is under criminal investigation. These alleged instructions were described at trial by a former IRS Criminal Investigation Division supervisor, Vernon Hampton. However, the district court was not compelled to credit Hampton's testimony, or to find that a reasonable agent should have been aware of these comments.

on-one contacts with potential witnesses. These contacts are much more focused than a mass mailing. Also, agents are obviously more selective in choosing these witnesses with whom they will personally meet. Because of the differences in the nature of the circular letter or mass mailing and the personal contact where oral disclosures are typically made, we are persuaded that a reasonable agent would conclude that the specific rules governing written disclosures in circular letters would not apply across the board to all disclosures, including oral disclosures.

Treasury Regulation § 301.6103(k)(6)-1 and § 348.3 of the Handbook buttress this conclusion and tend to support an agent's conclusion that he can orally inform a potential witness that he is conducting a criminal investigation. Treasury Regulation § 301.6103(k)(6)-1 provides that an IRS agent may disclose the "nature of the [his] official duties . . ." when conducting an investigation of a taxpayer. This would lead agents McPherson and Sanders, as reasonable agents, to conclude that they were authorized to disclose the nature of their official duties as a criminal tax investigation.

Section 348.3 of the Handbook provides further support for this conclusion. This section provides that "[s]ituations in which special agents may have to make such disclosures [of return information] in order to perform their duties arise on a daily basis. For example, this occurs whenever they contact third parties believed to have information pertinent to a tax investigation."

10

Also, it is clear to us that agents are authorized to display their credentials and badges identifying them as Criminal Investigation Division agents when interviewing a third party.[6] Knowledgeable persons know that agents in the criminal division conduct only criminal investigations. An agent's knowledge that his badge identifies his area of investigation further supports a reasonable agent's conclusion that he is authorized to orally disclose - what the third party probably already knows - that the agent is conducting a criminal investigation.

For all the reasons stated above, we agree with the district court that agents McPherson and Sanders, as reasonable agents, had a good faith belief that they could disclose the criminal nature of the investigation.

AFFIRMED.

---

[6]Section 977(11).1(4) of the Internal Revenue Manual currently states - as it did at the time of McPherson and Sanders's oral disclosures - that "a special agent will properly identify himself/herself by producing his/her pocket commission at the time of the interview."