KAZEN, Chief Judge:
The United States appeals the verdict of the district court following a bench trial in which the court found the United States liable for a violation of I.R.C. § 7431. The district court’s findings of fact and conclusions of law are set forth at 91 F.Supp.2d 1014 (S.D.Tex.1999). In sum, the trial *379 court determined that IRS Special Agent David Batista made unlawful disclosures of taxpayer Jerry S. Payne’s confidential return information in violation of I.R.C. § 6103, and that these violations were not the result of a “good faith, but erroneous” interpretation of law. I.R.C. § 7431(b). The court awarded Payne $1,536,680 in actual damages, $1,000 in punitive damages, and $105,361 in attorneys fees and costs. For reasons hereinafter discussed, we REMAND for further findings.

I. Factual Background

In the fall of 1989, the Internal Revenue Service began a civil audit of 2618, Inc., a Texas corporation that operated a topless dance club under the name Caligula XXI. Jerry Payne, an attorney, became the owner of 2618, Inc. in 1988 as compensation for legal services for the then-owner, Gerhard Helmle. The IRS agent conducting the audit, Colin Levy, suspected fraud and referred the case to the IRS Criminal Investigation Division. The investigation of Payne was assigned to Special Agent Batista.
In October 1991, Batista and Levy arrived unannounced at Payne’s law offices to Inform Payne of the initiation of the investigation. At that time, Batista produced a summons for business and financial records associated with 2618, Inc. In response, Payne declared his willingness to cooperate fully and to provide the requested information in a timely manner. Batista was satisfied with the sincerity of Payne’s stated intent to cooperate.
In December 1991, Batista began to contact third-parties seeking information regarding payments to Payne. For example, on December 19, 1991, Batista contacted the Texas Lawyers Insurance Exchange to inquire about a $36.00 payment it had made to Payne. Batista conceded that he could have obtained this information from Payne and that doing so would not have prejudiced his investigation. At trial, Batista admitted to making other third-party contacts as early as December 1991, and that he began to inquire into allegations of Payne’s involvement with illegal drugs. Although Payne voiced concern over these contacts, he and Batista agreed on January 16, 1992 to a timetable for the voluntary production of 2168, Inc.’s records. A week later, Batista and Levy came to Payne’s office to review and microfilm documents. Batista testified that, as of this date, he was happy with Payne’s performance, cooperation, and his efforts to produce needed information.
From October of 1991 to July of 1992, Payne sent numerous letters to Batista requesting him to clarify the issues under investigation. The gist of these letters was that Payne wanted to know the scope of the inquiry so that he could provide Batista with relevant information in a manner that would preserve the confidentiality of the investigation. In his correspondence, Payne repeatedly conditioned his continued cooperation on Batista’s agreeing to more specifically define the scope of his inquiry. Batista never responded to Payne’s requests for a listing of specific areas of concern. On March 2, 1992, Batista and his supervisor Swayzine Fields met with Payne at Payne’s office. During this meeting, Batista requested any work papers for Payne’s 1987 and 1988 personal tax returns. Payne agreed to provide them. This was the first and only documented request for information relating to Payne’s personal tax returns, although Batista testified that he made a previous oral request for the papers. Payne later informed Batista that he did not have any work papers for those returns.
By March of 1992, Batista apparently decided that Payne did not sincerely intend to cooperate with the investigation. *380 At trial, Batista initially could not recall any specific incident that led Mm to this conclusion, but he eventually testified that the tone of Payne’s letters gave him the sense that Payne would not fully disclose information without the imposition of untenable conditions. The district court concluded that Batista “had no rational explanation” for this conclusion. Payne, 91 F.Supp.2d at 1029. In any event, Batista accelerated the pace of his investigation during and after March 1992. In that month, Batista sent out ten summonses to various corporations and banks seeking bank statements, canceled checks, deposit slips and deposited items, loan applications/agreements and related records. During and after that month, Batista interviewed employees and officers of 2618, Inc. in person, introducing himself as a criminal investigator with the IRS who was investigating Payne’s possible violation of criminal revenue laws. Batista asked some of the employees and some of Payne’s relatives if they knew whether Payne used or sold illegal drugs. Batista contacted Payne’s clients and former clients mostly by mail, issuing summonses for copies of any retainer agreements, expense reimbursement statements, or cancelled checks of payment. Batista also spoke with some of these clients over the telephone and interviewed some in person. During the course of the investigation, Batista issued a large number of summonses and letters to third-parties that disclosed on their face that Payne was under criminal investigation, and he revealed that fact during his in-person interviews.
In March of 1993, Batista terminated his investigation of Payne and recommended the case to the Justice Department for criminal prosecution. For the first time, an attorney for the Justice Department informed Payne of particular issues of concern, and in response Payne provided information that led the United States to conclude that criminal prosecution was not warranted for all the matters recommended by Batista. In 1995 Payne was indicted on two counts of violating I.R.C. § 7206 relating to tax fraud and three counts of violating I.R.C. § 7203 relating to failure to file tax returns. The trial court dismissed the § 7206 charges, and a jury acquitted Payne of the § 7203 charges.
Following the criminal trial, the IRS completed its civil examination and issued Payne a notice of deficiency for 1987 and 1988 individual income taxes and civil fraud penalties. The United States Tax Court entered a decision determining Payne’s individual income tax for those years, and sustaining the fraud penalties. Payne v. Commissioner, 75 T.C.M. (CCH) 2548, 2565 (1998). This court reversed. Payne v. Comm’r of Internal Revenue, 224 F.3d 415, 424 (5th Cir.2000). The panel found that the tax court erred in ruling that the United States had proven fraud by “clear and convincing” evidence and thus erroneously relied on the statutory fraud exception to prevail over the applicable statute of limitations. Id.
Payne then filed this suit in the district court, seeking damages from the United States and several IRS agents for their actions in conducting the investigation. The district court dismissed all defendants other than the United States, and all claims other than the wrongful disclosure of tax information claim. This claim was tried to the court, and at the conclusion of the trial, the court held as follows: (1) Batista made a large number of third-party contacts in the course of his investigation of Payne without first determining whether the information sought was otherwise reasonably available; (2) Batista did not consider himself under any obligation to seek necessary information from Payne; (3) Batista disclosed numerous items of *381 return information to these third parties, including the fact that Payne was subject to a criminal investigation; (4) there was no evidence that any of the disclosures of return information were necessary to obtain the information Batista sought; (5) Batista’s disclosures did not result from a good faith but erroneous interpretation of the applicable statutory provision; (6) Batista’s improper disclosures damaged Payne’s law practice; (7) Batista grossly abused his discretion in making the numerous third-party contacts without first affording Payne the opportunity to provide the needed information, and in particular by inquiring about Payne’s involvement with illegal drugs; and (8) the United States’ litigation position was unreasonable given that Batista made no determination as to whether the information he sought was otherwise reasonably available.

II. Standard of Review

We review the district court’s findings of fact for clear error and conclusions of law de novo. Dunbar Medical Systems, Inc. v. Gammex Inc., 216 F.3d 441, 448 (5th Cir.2000). Similarly, as to mixed questions of law and fact, we review the district court’s fact findings for clear error, and its legal conclusions and application of law to fact de novo. Sugar Busters, LLC v. Brennan, 177 F.3d 258, 269 (5th Cir.1999). In reviewing factual findings for clear error, we defer to the findings of the district court unless we are left with a definite and firm conviction that a mistake has been committed. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); Dunbar Medical Systems, 216 F.3d at 453.

III. Statutory Framework

I.R.C. § 7431(a) creates a right of action against the United States if a federal employee or official knowingly or negligently violates the confidentiality provisions of § 6103. Section 6103 states in relevant part:
Returns and return information shall be confidential, and except as authorized by [the Internal Revenue Code], no officer or employee of the United States ... shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise under the provisions of this section.
I.R.C. § 6103(a). “Return information” is defined broadly, to include in relevant part, “a taxpayer’s identity ... [and] whether the taxpayer’s return was, is being, or will be examined or subject to investigation-” I.R.C. § 6103(b)(2)(A). The United States concedes that Batista disclosed “return information.” The United States does not incur liability for a violation of § 6103, however, if the violation “results from a good faith, but erroneous, interpretation of section 6103.” I.R.C. § 7431(b). In the case of a finding of liability, I.R.C. § 7431(c) provides for the award of statutory or actual damages, punitive damages, and attorneys fees.
I.R.C. § 6103(k)(6) creates a safe harbor for IRS agents carrying out certain investigative duties, and allows for disclosures as follows:
An internal revenue officer or employee may, in connection with his official duties relating to any ... criminal tax investigation ... disclose return information to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available, with respect to the correct determination of tax, liability for tax, or the amount to be collected or with respect to the enforcement of any other provision of this title. Such disclosures shall be made only in such situations and under *382 such conditions as the Secretary may prescribe by regulation.
The Secretary has promulgated regulations pursuant to its authority. See 26 C.F.R. § 301.6103(k)(6)-l(a) & (b).
As § 6103(k)(6) has been construed by case law, an IRS agent may disclose return information during an investigation in order to obtain information, provided three requirements are met: (1) the information sought is “with respect to the correct determination of tax, liability for tax, or the amount to be collected or with respect to the enforcement of any other provision of the [Internal Revenue Code].” (2) the information sought is “not otherwise reasonably available”; and (3) it is “necessary to make disclosures of return information in order to obtain the additional information sought.” DiAndre v. United States, 968 F.2d 1049, 1052 (10th Cir.1992); see also Barrett v. United States, 795 F.2d 446, 449 (5th Cir.1986) (“Barrett I”).

IV. Points of Error

The United States raises five points of error. It argues that:
1. The district court erred as a matter of law by concluding that Batista was obliged to consider Payne as a source from whom necessary information might be “otherwise reasonably available.” According to the United States, the taxpayer under investigation is an inherently unreliable source of information, and thus is never a “reasonably available” source of information.
2. Even if the taxpayer might be a source from whom information is “otherwise reasonably available,” the district court erred in finding that Payne was such a source here. Further, the district court erred in finding that the disclosures were not necessary to obtain the information sought. 3. If Batista did violate § 6103, the district court erred in finding that Batista’s violation was not the result of a “good faith, but erroneous, interpretation” of that section.
4. The district court erred in awarding punitive damages.
5. The district court erred in awarding and calculating attorneys fees.
Payne cross-appeals the district court’s damage award, contending that he had provided sufficient evidence to sustain an award of $3.3 million in actual damages and $9.9 million in punitive damages.

V. The Taxpayer as “Reasonably Available” Source of Necessary Information

The United States argues that IRS special agents need never consider the taxpayer under investigation as a source from whom information is “reasonably available.” Reviewing the statute and regulations promulgated under its authority, as well as the court decisions construing § 6103(k)(6), we find no convincing authority for this rigid proposition.
According to the regulations, disclosures are authorized only when the necessary information cannot be reasonably obtained in “accurate and sufficiently probative form” or in a “timely manner,” and “without impairing the proper performance of official duties.” 26 C.F.R. § 301.6103(k)(6)-l(a) & (b). Whether a disclosure is authorized depends upon the “facts and circumstances of the particular case.” Id. Rather than foreclosing the possibility that the taxpayer could ever be a source from whom necessary information may “reasonably be obtained,” the regulations reflect the fact-intensive nature of the inquiry.
While we find no previous case that addresses the precise argument made by *383 the United States here, this court’s decision in Barrett I implicitly considers the taxpayer a “reasonably available” source of necessary information. There, the court reversed a summary judgment in favor of the IRS, finding a fact issue as to whether certain third-party contacts were necessary. Noting evidence that the IRS had “free access” to the taxpayer’s bank records, the court concluded that “some disclosures, perhaps all, might have been avoided by reviewing and analyzing [those] bank records.” Barrett I, 795 F.2d. at 450.
In Kemlon Products & Development Co. v. United States, 638 F.2d 1315 (5th Cir.1981), modified on pet. for rehearing, 646 F.2d 223 (5th Cir.1981), this court reversed the granting of a permanent injunction prohibiting the IRS from disclosing the taxpayer’s return information to its customers. The injunction was held to have violated the Anti-Injunction Act, 26 U.S.C. § 7421(a) (1999), because the taxpayer had not proved irreparable harm from the contacts. Id. at 1322. The court then suggested that even if irreparable harm had been established, in “all likelihood” the United States could defend a lawsuit on the basis of § 6103(k)(6). The underlying issue involved the value of certain patents, and the court noted the affidavit of the investigating agent that direct contact with the taxpayer’s customers would be necessary to ensure candid responses. Id. at 1325. The tenor of this dicta indicated that the panel was evaluating the facts in that particular case and not endorsing an inflexible rule.[1]
The United States argues that it has the duty to corroborate a taxpayer’s admissions and to investigate all reasonable leads to eliminate non-taxable deposits. See Smith v. United States, 348 U.S. 147, 154, 75 S.Ct. 194, 198, 99 L.Ed. 192 (1954); United States v. Hiett, 581 F.2d 1199, 1201-1202 (5th Cir.1978); United States v. Boulet, 577 F.2d 1165, 1168 (5th Cir.1978). Both of these tasks, the United States asserts, may only be accomplished through third-party contacts. To the extent that necessary evidence, corroborating or otherwise, is not reasonably available from sources provided by the taxpayer, § 6103(k)(6) obviously authorizes third-party contacts. However, even corroborating evidence might be available from bank or other records to which a taxpayer voluntarily grants access, thus negating the necessity of contacting third-parties. At any rate, in this case Batista was not merely corroborating information. previously provided by Payne. Further, we find no contradiction between the need to eliminate nontaxable sources of income while still considering the taxpayer an “available source” of information, because “[i]n the typical ease, the taxpayer gives the IRS ‘leads’ to possible nontaxable sources.” Hiett, 581 F.2d at 1201; see also Boulet, 577 F.2d at 1169.
We do not hold that the taxpayer is always such a fruitful and reliable source of information that IRS agents may never approach third-parties for necessary information. We hold only that such a determination must be made in light of the “facts and circumstances of the case,” and that *384 the taxpayer’s cooperation legitimately forms part of the inquiry.

VI. Necessity for Third-Party Contacts

The United States attacks the district court finding that, on the facts and circumstances of this case, Payne was a “reasonably available” source of information and that the disclosures were unnecessary in order to obtain the information sought! The district court found that Payne’s efforts to cooperate were sincere and made in good faith, and that Batista in contrast made little or no effort to use this cooperation to advance his investigation. The court then made a blanket finding of no evidence that any disclosure of Payne’s return information was necessary. We must evaluate this finding, however, only to the extent that it led to any damages to Payne. In Barrett v. United States, 100 F.3d 35 (5th Cir.1996) (“Barrett III”), this court explained that the type of damages which must be proved by the taxpayer depends on the nature of the violation by the IRS. Thus, if the violation is simply an unnecessary third-party contact, an attorney-taxpayer such as Payne would have to prove that he lost business because of his clients’ concerns over privacy issues. On the other hand, a violation occasioned by disclosure of the criminal nature of the investigation requires proof that Payne lost business because his clients thought him to be a “tax cheat.” Id. at 39. It is clear from the district court opinion and the record that Payne’s proof of damages was of the latter type. Accordingly, we focus on the finding that Batista regularly revealed the criminal nature of his investigation of Payne when making third-party contacts, since Payne’s damages can only be sustained on the basis of these disclosures.
This court has previously held that it was unnecessary for an IRS agent to disclose the criminal nature of an investigation when sending circular letters to the public requesting information regarding the taxpayer. See Barrett v. United States, 51 F.3d 475, 479 (1995) (“Barrett II”). Applying this standard, the district court here found that Batista’s disclosure of the criminal nature of his investigation was not necessary to obtain the information sought. The district court specifically found that “Batista issued a large number of administrative summonses and letters to third-parties which disclosed on their face that Payne was under criminal investigation.” 91 F.Supp.2d at 1025. While the partial dissent considers this finding to be clearly erroneous, it is not directly challenged by the United States in this appeal. Instead, the United States argues that “the circular letter cases do not apply to live, face-to-face interviews.” As discussed infra, ultimate resolution of this issue will require further factual findings.

VII. Good Faith Erroneous Interpretation of Law

The United States argues that even if Batista made unauthorized disclosures, he did so pursuant to a good faith, but erroneous, interpretation of § 6103. In connection with a § 7134 violation, this circuit evaluates “good faith” under an objective standard. See Huckaby v. United States Dept. of Treasury, I.R.S., 794 F.2d 1041, 1048 (5th Cir.1986); Barrett II, 51 F.3d at 479. “A reasonable IRS agent can be expected to know statutory provisions governing disclosure, as interpreted and reflected in IRS regulations and manuals. An agent’s contrary interpretation is not in good faith.” Id. Applying this test, the district court found that “a reasonable IRS agent would not have violated the express provisions contained in Sections 6103 and 7431 and in the IRS manuals and regulations.” Payne, 91 F.Supp.2d at 1026. The district court further explained that “Ba *385 tista initially claimed that although he was familiar with the statutes and the IRS regulations he was not required to try and obtain the needed information from the taxpayer first before with third-parties. Batista eventually admitted that he had violated express provisions regarding disclosure.” Id. Accordingly, the court found that Batista’s disclosures were not made in good faith.
Following the district court’s decision, we had occasion to examine the application of the Huckaby standard. In Gandy v. United States, 234 F.3d 281 (5th Cir.2000), we held that two IRS agents who had disclosed return information (the taxpayer’s identity and the fact of criminal investigation) to customers of a nursery had acted in good faith. The disclosures at issue were oral, made to customers the agents interviewed following distribution of a circular letter. We noted that Section 347.2 of the IRS Handbook, at least prior to 1992 changes, regulated the format and content of circular letters but did not apply “across the board to all disclosures, including oral disclosures.” Id. at 286. We then noted Treasury Regulations allowing an IRS agent to disclose the nature of his official duties when investigating a taxpayer, as well as a Handbook provision authorizing display of credentials and badges identifying Criminal Investigation Division agents. We thus concluded that the IRS agents had a good faith belief that they could disclose the criminal nature of their investigation. Id. at 286-87.
The district court did not have the benefit of Gandy when it concluded that Batista did not have a good faith belief that he could disclose the fact of a criminal investigation. Also, as noted in Gandy, the section of the Handbook pertinent to that decision was amended in 1992. Furthermore, the district court’s finding of bad faith appears to be based on the premise that all third-party contacts by Batista were not authorized. However, as we previously indicated, Payne’s evidence of damages was based primarily on the disclosures of the criminal nature of the investigation. The number of third-parties contacted and disclosures made in this case is voluminous. Batista discussed the investigation with third-parties via in-person interviews, telephone calls, letters, and summonses. The holding that Batista lacked good faith is not tied to particularized findings as to precisely what information about a criminal investigation was disclosed to which parties and under which circumstances. Determining which of these disclosures were necessary and reconciliation with Gandy will therefore entail further factfinding by the district court.[2]

VIII. Conclusion

This case is remanded for proceedings not inconsistent with this opinion. Payne’s cross-appeal for increased actual and punitive damages is dismissed as premature.
REVERSED AND REMANDED

. In recent litigation, the United States has implicitly adopted the position that the subject of the investigation might be a reasonable source of information. See Nowicki v. Comm'r of Internal Revenue, 262 F.3d 1162 (11th Cir.2001). There, the United States argued that the third-party contact was authorized by § 6103(k)(6) because "information regarding the nature of the expenses ... was 'not otherwise reasonably available’ because [the taxpayer] disclaimed any knowledge of the nature of the expenses ...Id. at U63 (emphasis added). Such an argument connotes that the taxpayer is not inevitably an inherently unreliable source for obtaining necessary information.

. We have no quarrel with the proposition that the good-faith analysis under § 7431 should follow the approach described in Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) for civil rights cases. That is, the district court should determine whether an error has actually been committed before considering whether the agent acted in good faith. Since we are asking the district court to make more specific fact findings in this case, we think this issue can be clarified at that time.