GRUENDER, Circuit Judge,
concurring in part and dissenting in part.
I respectfully dissent from parts II.A, B, D and G of the Court’s opinion. I *513 agree with the Court that § 6103(a) does not forbid an agent from showing his badge and identifying himself as a criminal investigator.[7] I also agree that Special Agent Jackson violated the statute when he disclosed return information beyond the identities of the Taxpayers under investigation. However, I would hold that Jackson’s disclosures that the Taxpayers were under investigation do not constitute violations of § 6103(a) because they were necessary under § 6103(k)(6). In addition to being necessary, these disclosures were made consistent with the IRS’s good faith interpretation of § 6103(k)(6) and the corresponding regulation at 26 C.F.R. § 301.6103(k)(6)-l and Jackson’s good faith interpretation of the IRS policy memorandum. See § 7431(b)(1). I also would hold that the number of disclosures for statutory damages purposes should be calculated based on each specific act of Jackson’s disclosure, regardless of the number of individuals who heard each improper disclosure or the number of pieces of information disclosed in any single act of disclosure. Finally, I would hold that the Taxpayers are not entitled to attorney’s fees because the Government’s position was substantially justified.
Turning first to the question of Jackson’s disclosures that the Taxpayers were under investigation, I would hold that these disclosures were not violations of § 6103(a). I agree with the Court that Jackson disclosed return information as defined in § 6103(b)(2)(A), but these disclosures were necessary under § 6103(k)(6). Furthermore, these disclosures were based on the IRS’s good faith interpretation of § 6103(k)(6) and the corresponding regulation as well as Jackson’s good faith interpretation of the IRS policy memorandum. See § 7431(b)(1).
It frequently will be necessary for a special agent to disclose that a taxpayer is under investigation when he questions a third-party witness during an investigation. The term “necessary” in § 6103(k) is undefined by that statute. Two possible interpretations are “strictly essential” or “appropriate or helpful.” Payne v. United States, 289 F.3d. 377, 389 (5th Cir.2002) (Garza,. J., dissenting in part). The “strictly essential” meaning, which the district court appeared to adopt, would require absolute proof that there was no other possible means for obtaining information. Id. at 389-90. This rigid definition is not commonly used in legal contexts. Id. (citing Comm’r v. Heininger, 320 U.S. 467, 471, 64 S.Ct. 249, 88 L.Ed. 171 (1943)). Instead, the “appropriate or helpful” meaning of “necessary” is the only practical interpretation in this context. Id. In fact, just prior to some of the final interviews at issue in this case, the IRS expressly adopted the “appropriate or helpful” definition pursuant to Congress’s authorization for the IRS to identify the situations where a disclosure is necessary. § 6103(k)(6). The temporary regulation defined “necessary” as “appropriate and helpful in obtaining the information sought.” 26 C.F.R. § 301.6103(k)(6)-lT(c)(l) (effective July 10, 2003). The current regulation continues to employ this definition of “necessary.” 26 C.F.R. § 301.6103(k)(6) — 1(c)(1) (2006). Therefore, *514 I would adopt the “appropriate or helpful” meaning of “necessary.”
A special agent’s disclosure of the taxpayer who is under investigation is almost always appropriate or helpful during an interview because third-party witnesses expect an agent to disclose the reason for the interview. See Payne, 289 F.3d at 390 (Garza, J., dissenting in part); Gandy v. United States, 234 F.3d 281, 286 (5th Cir.2000). This disclosure is helpful because of the spontaneous and personal nature of an interview and the witness’s apprehension naturally occasioned by the presence of a criminal investigator. Absent this degree of introductory detail, a third-party witness typically will fear that he or she is a target of the investigation and, as a result, be less than candid or exercise his or her right to refuse to answer questions. Setting the witness’s mind at ease on this point will often be necessary to encourage the witness to speak freely in response to an agent’s questions.[8] See Fostvedt v. United States, 824 F.Supp. 978, 983 (D.Colo.1993) (finding the disclosure of “such minimal, ‘nonsensitive’ facts as the taxpayer’s name” during an investigation was necessary), aff'd 16 F.3d 416 (10th Cir.1994) (unpublished); Rhodes v. United States, 903 F.Supp. 819, 824 (M.D.Pa.1995) (holding that minimal disclosures such as the name of the investigated taxpayer fall within the § 6103 exception).
Jackson’s disclosures that the Taxpayers were under investigation were necessary despite the Taxpayers’ witnesses’ post hoc testimony at trial that they would have been cooperative without these disclosures by Jackson. The district court incorrectly determined that these disclosures were unnecessary based on a “strictly essential” definition of “necessary.” However, under the “appropriate or helpful” meaning of “necessary,” Jackson’s disclosures were “helpful” in establishing the needed trust of the witnesses at the outset of the interviews. If Jackson had missed an introductory opportunity to gain this trust, the interview may not have been salvageable. While there might have been another way to gain this trust, evidence showing “some [other] possible way” to obtain information cannot render an oral disclosure unnecessary under the “appropriate or helpful” definition. Payne, 289 F.3d at 390 (Garza, J., dissenting in part). Therefore, Jackson’s disclosures of the identities of the Taxpayers under investigation were necessary.
The Court and the district court incorrectly dismiss Jackson’s necessity defense based on the assertion that Jackson denied making these disclosures. This reasoning is flawed in its premise because Jackson, in fact, did testify at trial that he began his interviews by disclosing the names of the taxpayers being investigated.[9] Trial Transcript at 783-84, 824. Because Jackson did, in fact, acknowledge disclosing that the Taxpayers were under investigation, *515 his necessity defense cannot be denied on that basis.
Even if I were to find that the disclosures were not necessary, I would find that Jackson’s disclosures that the Taxpayers were under investigation also resulted from the IRS’s and Jackson’s good faith interpretations that such disclosures were necessary under § 6103(k)(6). When an agent discloses return information that is not necessary under § 6103(k)(6), the IRS and its agent will not be liable if the disclosure “results from a good faith, but erroneous, interpretation of § 6103.” § 7431(b)(1). We have expressed two different viewpoints regarding this good faith exception. Under one view, the good faith exception only applies when the IRS, not the special agent, interprets the statute in good faith. Diamond, 944 F.2d at 435. Under the second view, the good faith exception also applies when the special agent interprets the IRS guidelines in good faith. Jones v. United States, 97 F.3d 1121, 1125 (8th Cir.1996). Under either viewpoint, Jackson’s disclosures that the Taxpayers were under investigation resulted from a good faith interpretation of § 6103(k)(6) and the corresponding regulation.
At the time of Jackson’s disclosures, the courts had not provided clear guidance concerning the necessity of orally disclosing the identity of the taxpayer under investigation. See Diamond, 944 F.2d at 437; Gandy, 234 F.3d at 285. The Fifth Circuit in Gandy avoided the question and simply stated that the necessity of disclosing the identity of the taxpayer under criminal investigation during an interview with a witness was a “difficult legal question.” Id. Rather than addressing that difficult question, the Fifth Circuit instead affirmed the oral disclosures based on the agent’s good faith in making the disclosures. Gandy, 234 F.3d at 285.
In the absence of controlling authority, the IRS interpreted § 6103(k)(6) and the corresponding regulation in good faith and determined that it was necessary for its special agents to disclose the identity of the taxpayer under investigation during third-party interviews. The IRS released a memorandum based on this good faith interpretation of § 6103(k)(6) that provided direction to special agents as to the appropriate method of introducing themselves at a third-party witness interview. The memorandum directed special agents to identify themselves as follows:
Mr. or Ms. XXXXXX my name is John Doe, I am a special agent with Internal Revenue Service, Criminal Investigation (display credentials for examination and introduce any other officials present). I am conducting an investigation of Mr. or Ms. XXXXX and I would like to ask you some questions regarding this matter.
Memorandum for Cl Special Agents in Charge, Internal Revenue Service, Criminal Investigation, Feb. 2, 2001 (Def. Exhibit 51). The memorandum, along with the lack of clear guidance by the courts, suggests that the IRS interpreted the necessary exception of § 6103(k)(6) in good faith. In Diamond, we applied this good faith exception to the IRS in a similar manner. Although we held that the use of “Criminal Investigation Division” in circular letters was not necessary, we still found that the IRS interpreted § 6103(k)(6) in good faith. Diamond, 944 F.2d at 435-36. The IRS made a similar good faith interpretation in this case.
Jackson also acted in good faith by adhering to this IRS policy. Jackson testified that he generally followed the IRS’s recommended method of introducing himself to witnesses, including the disclosure of the identity of the taxpayer under investigation. Jackson gave the following description of his method of introducing *516 himself to witnesses: “I would introduce myself as Rob Jackson. I’m a special agent with IRS Criminal Investigation and I’m conducting an interview [sic] of Mr. Snider and Ms. Turley and I would show them my credentials.” Trial Transcript at 782. This testimony demonstrates that Jackson’s disclosure that the Taxpayers were under investigation was consistent with the IRS’s policy. Therefore, because both the IRS’s interpretation of § 6103 and Jackson’s interpretation of the IRS’s policy were in good faith, I would find no liability for Jackson’s disclosures that the Taxpayers were under investigation.[10]
Next, I would find that § 7431(c)(1)(A) limits the statutory damages for disclosures to the number of specific acts of disclosure. When there are no actual damages, the number of violations for purposes of determining statutory damages is based on “each act of unauthorized inspection or disclosure of a return or return information with respect to which such defendant is found liable.” 26 U.S.C. § 7431(c)(1)(A) (emphasis added). A statement by a special agent is a single “act,” regardless of the number of people who hear the statement or the number of separate items of return information included in the statement. Even if one oral disclosure is heard by numerous people, it is still one “act” of disclosure. Siddiqui v. United States, 359 F.3d 1200, 1202-03 (9th Cir.2004) (holding that an oral disclosure to 100 people did not equal 100 disclosures). I agree with the Ninth Circuit’s reasoning in Siddiqui that this interpretation of § 7431(c)(1)(A) is based on the “plain meaning of the language used by Congress in § 6103.” Id. at 1202. Additionally, if one oral disclosure includes numerous items of return information, it is still one “act” of disclosure. See Rorex v. Traynor, 771 F.2d 383 (8th Cir.1985).
Under the Court’s expansive reading of the statute, the statutory damages for a single act of disclosure could result in an unimaginable windfall to a taxpayer for a disclosure disseminated to a large number of recipients over the internet, television or radio. For instance, a single disclosure of a taxpayer’s return information to one million people on national television would result in $1,000,000,000 in statutory damages. This surely was not the result Congress intended when it provided for statutory damages of $1,000 per act of improper disclosure in the absence of actual damages. The Court’s concern that counting only the agent’s “act” would “nullify the language ‘in any manner whatever’ ” and not adequately “track culpability and injury” is unfounded. Ante at 508-09. The statute provides for actual damages where dissemination to multiple listeners or of multiple items of return information results in more substantial injury. Because a taxpayer can use evidence of widespread dissemination to prove actual damages, *517 there is no disproportionality to culpability or injury. The taxpayer is free to prove that the disclosure resulted in actual damages to the extent that actual damages exceed the statutory damage amount of $1,000 for the act of improper disclosure. In the instant case, applying the plain language of the statute would reduce significantly the number of disclosures found by the district court for which statutory damages are appropriate. For example, the district court found seven unauthorized disclosures of Leonard Snider’s return information from Jackson’s interview with Mark Bowman when it should have only found one unauthorized “act” of disclosure.
Finally, I would hold that the Taxpayers are not entitled to attorney’s fees because the Government’s position was substantially justified under § 7430(c)(4)(B).[11] The Government’s position is substantially justified “if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.” Pierce v. Underwood, 487 U.S. 552, 556 n. 2, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). Where the Government relies on its witness’s credibility, its position is substantially justified. See, e.g., Jones v. United States, 207 F.3d 508, 512-13 (8th Cir.2000). The Government correctly argued that Jackson’s credibility was a key issue in the case. While Jackson admitted to disclosing both his position with the IRS and the Taxpayers’ identities in interviews, he denied any further disclosure of the Taxpayers’ return information. As the district court stated, this was a case of witness credibility, and a reasonable person could agree with the Government’s position. Consequently, the Government’s position was substantially justified.
The Court incorrectly holds that the Government’s position was not substantially justified because the Taxpayers’ witnesses consistently refuted Jackson’s testimony. However, the Government reasonably could believe that the district court would find these witnesses unreliable because of their biases and relationships with the Taxpayers. Additionally, the Government could also reasonably believe that the district court would find the special agent’s testimony credible. Because a reasonable person could believe the Government’s position, it was substantially justified. Therefore, the taxpayers should not be entitled to $463,777.50 in attorney’s fees.
For these reasons, I respectfully dissent in part and would remand for a determination of the correct number of violations and damages consistent with this opinion.

. While we have held that an agent’s use of "Criminal Investigative Division” in circular letters to describe his or her position is not necessary, see Diamond v. United States, 944 F.2d 431, 436 (8th Cir.1991), I agree with the Court that this disclosure is necessary during a personal interview because an interview is different than a circular letter. See Payne v. United States, 289 F.3d 377, 390-91 (5th Cir.2002) (Garza, J., dissenting in part) (stating that witnesses have "social expectations about police identifying themselves” during an interview).

. It is true that a special agent could inform the witness that he or she is not being investigated without identifying the taxpayer who is being investigated. However, such evasiveness by the special agent about the true target of the criminal investigation would likely leave some doubt in the witness’s mind about his or her status as a potential target and create an untrustworthy environment for the ensuing interview. Instead, an agent’s specific disclosure of the actual taxpayer being investigated is more likely to reassure the witness and result in a successful and candid interview.

. Jackson did deny disclosing other facts to the third-party witnesses, such as the facts that one Taxpayer employed illegal immigrants and that two Taxpayers did not pay taxes on workers. Trial Transcript at 861-62, 865-66. However, these facts are not at issue.

. The IRS memorandum suggests that agents should disclose that the taxpayers are under investigation, but not under criminal investigation. The district court found that Jackson disclosed that one or more of the Taxpayers were "under criminal investigation” in some interviews and that one or more of the Taxpayers were "under investigation” in other interviews. I find no reason to distinguish between the two situations because Jackson, in both situations, interpreted the IRS memorandum in good faith. Jackson could reasonably believe that it was appropriate to disclose that the Taxpayers were under criminal investigation when he was also authorized to state (1) he was a special agent in the Criminal Investigation Division and (2) he was investigating the Taxpayers. Any reasonable person would deduce that a special agent working in the Criminal Investigation Division was conducting a criminal investigation. Thus, in light of the conclusion that § 6103(a) allows Jackson to identify himself as an agent in the Criminal Investigation Division, the distinction between a criminal investigation and an investigation is insignificant.

. In addition, if the district court applied my analysis on remand, Taxpayers may not have substantially prevailed in this case. See §§ 7431(c)(3), 7430(c)(4).