# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 12, 2012

Lyle W. Cayce
Clerk

No. 11-30692
Summary Calendar

DARRYL CUNNINGHAM,

Plaintiff - Appellant

v.

TERREBONNE PARISH CONSOLIDATED GOVERNMENT; TODD
DUPLANTIS; Individually and as Interim Chief, City of Houma Police
Department; TRAVIS THERIOT, Individually and as Detective, City of
Houma Police Department,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:09-CV-8046

Before GARZA, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:[*]

After conducting a three-day bench trial, the district court entered final judgment in favor of Defendants-Appellees Terrebonne Parish Consolidated Government (the "TPCG"), Chief Todd Duplantis ("Duplantis"), and Detective

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-30692

Travis Theriot ("Theriot") on all of Lieutenant Darryl Cunningham's ("Cunningham") causes of action. We AFFIRM.

Cunningham is an employee of the City of Houma Police Department (the "HPD"), a department of the TPCG. In fall 2008, Cunningham learned that the HPD representative to the City of Houma Municipal Fire and Police Civil Service Board (the "Board") was resigning, and he decided to run for the position. However, Cunningham contends that HPD never posted notice seeking candidates. When Cunningham later learned that a candidate had already been nominated and that the election date had been scheduled, he complained to Duplantis. Thereafter, Cunningham spoke with two reporters for the Houma Courier (the "Courier"), the official newspaper of the TPCG where agendas, meeting minutes, and notices relating to the Board were published, to inquire if the Courier had published any notice about the election. The next day, Duplantis received a call from a Courier reporter regarding the posting of the election notice. When confronted, Cunningham first contended that the Courier had initially contacted him but later admitted that he had initiated the contact.

Citing departmental policy prohibiting employees from contacting the media about departmental issues, Duplantis counseled Cunningham on his conduct and placed an adverse supervisory note in Cunningham's file. A few days later, Duplantis received another call from the Courier. The caller mistakenly believed he was speaking with Cunningham and divulged information to Duplantis potentially implicating Cunningham in departmental policy violations. After this call, Duplantis initiated an internal affairs ("IA") investigation of Cunningham's communication with the Courier, his truthfulness, and insubordination (the "Courier IA investigation").

Later, Cunningham opened a letter addressed to Duplantis's secretary. Although he maintained that the letter had been placed mistakenly in his HPD inbox, accusations of theft and mail tampering prompted Duplantis to initiate

No. 11-30692

another IA investigation of Cunningham; this time for theft, criminal mischief, and truthfulness (the "Letter IA investigation").

Detective Theriot was assigned both of Cunningham's IA investigations, the first IA investigations of Theriot's career.  Theriot testified that, as part of the Courier IA investigation, he decided to confer with the District Attorney (the "DA") about obtaining a subpoena for copies of Cunningham's cell phone records to check the dates of his communication with the Courier.  Cunningham's cell phone is a personal cell phone, but he receives a monthly stipend from the TPCG to cover the costs of any work-related calls.  Theriot also testified that when he conferred with the DA's office—who ultimately issued the subpoena—he unequivocally represented that the subpoena request was for the Courier IA investigation only.  At trial, the DA's office contended that it lacks the authority to issue subpoenas for IA investigations, but that the conversation with Theriot gave the impression that the subpoena was for a criminal investigation into mail theft or criminal mischief.

Pursuant to the subpoena, which stated that it was for an IA investigation and was signed by both the Assistant DA and a state court judge, Theriot obtained Cunningham's cell phone records.  Later, when the DA's Office realized that the subpoena had been issued for an IA investigation, it instructed Theriot to return the cell phone records, which he did.  It is undisputed that Theriot is the only one who viewed Cunningham's cell phone records before turning them over to the DA's Office.

During the pendency of the IA investigations, Cunningham was placed on administrative leave with pay.  The Courier IA investigation was unsustained in all respects, but the Letter IA investigation was sustained as to truthfulness and criminal mischief.  However, the sustained findings were subsequently overturned.

3

No. 11-30692

A few months later, Cunningham received what he claims was the worst performance evaluation rating of his career, but still above the minimum required for a merit-based salary raise. However, Duplantis, who had sole discretion regarding such raises, denied Cunningham a raise.

Thereafter, Cunningham filed suit pursuant to 42 U.S.C. § 1983, alleging that Defendants-Appellees violated his civil rights. Specifically, Cunningham alleged that in violation of state and federal law, Defendants-Appellees (1) retaliated against him for communicating with the Courier in violation of his right to free speech, (2) unlawfully searched and seized his personal cell phone records, and (3) violated his right to privacy in connection with the personal cell phone records.

After conducting a bench trial, the district court issued oral findings of fact and conclusions of law. The district court explicitly credited Duplantis's trial testimony over Cunningham's that, notwithstanding Cunningham's contact with the Courier, he would have denied Cunningham's raise based on his violations of departmental policy and repeated caustic remarks made toward his supervisors. In addition, the district court found Theriot's testimony credible that he unequivocally represented to the DA's office that the requested subpoena was for the Courier IA investigation, and it concluded that Cunningham failed to controvert with any credible evidence that Theriot acted in good faith.[1] It further found that Theriot did not intentionally or recklessly omit any material facts to mislead the DA's office. Moreover, the district court concluded that Theriot's actions in conferring with the DA's Office regarding the subpoena and

---

[1] On appeal, Cunningham misconstrues the district court's reference to "good faith" as the district court's *sua sponte* invocation of the affirmative defense of qualified immunity on behalf of Defendants-Appellees. It is clear from our review that the district court's reference to "good faith" was with regard to Theriot's conduct in seeking the cell phone records. Accordingly, there is no merit to Cunningham's argument that the district court impermissibly raised *sua sponte* the qualified immunity defense on behalf of the Defendants-Appellees.

No. 11-30692

having the subpoena approved by the Assistant DA and a judge, convincingly supported the reasonableness of his conduct in obtaining Cunningham's cell phone records. Since the evidence presented by Defendants-Appellees was more credible on all the claims and defenses to those claims, the district court entered judgment in their favor, dismissing all of Cunningham's claims.[2]

Cunningham appeals the district court's final judgment following a bench trial. We thus review the district court's factual findings for clear error and its conclusions of law *de novo*. *E.g., French v. Allstate Indem. Co.*, 637 F.3d 571, 577 (5th Cir.), *cert. denied*, 132 S. Ct. 420 (2011). In addition, "as to mixed questions of law and fact, we review the district court's fact findings for clear error, and its legal conclusions and application of law to fact *de novo*." *E.g., Payne v. United States*, 289 F.3d 377, 381 (5th Cir. 2002) (citation omitted).

Furthermore, we must defer to the district court's factual findings unless "we have a definite and firm conviction that a mistake has been committed" that warrants reversal. *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 375 (5th Cir. 2000). Moreover, since Federal Rule of Civil Procedure 52(a)(6) requires that we give due regard to the district court's credibility evaluations, "'[t]he burden of showing that the findings of the district court are clearly erroneous is heavier if the credibility of witnesses is a factor in the trial court's decision.'" *Dunbar Med. Sys., Inc. v. Gammex Inc.*, 216 F.3d 441, 453 (5th Cir. 2000) (citation omitted). Accordingly, "[w]e cannot second guess the district court's decision to believe one witness' testimony over another's or to discount a witness' testimony. Thus, we are reluctant to set aside findings that are based upon a trial judge's determination of the credibility of witnesses giving contradictory accounts." *Canal Barge*, 220 F.3d at 375 (internal citation omitted).

---

[2] Prior to filing for appeal, Cunningham moved for a new trial solely on his Fourth Amendment claim regarding the search and seizure of his personal cell phone records, which the district court denied. However, Cunningham does not appeal its denial.

5

No. 11-30692

We have carefully considered the pertinent portions of the record in light of the parties' briefs and applicable law. Our review confirms that the matters Cunningham disputes were primarily questions of fact which the district judge, as the finder of fact, was free to resolve as he did under the evidence. With respect to the district court's conclusions of law, we determine that there is no reversible error in the challenged conclusions.

AFFIRMED.